## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

QUIZINSIGHT.COM PARTNERSHIP, *et al.*,

        *Plaintiffs*,

    v.

ROSS LEE TABAK,

        *Defendant.*

No. 18-cv-1878 (DLF)

## <u>MEMORANDUM OPINION</u>

Plaintiffs Roy Feinson and two partnerships sue defendant Ross Lee Tabak for, among other things, interfering with the advertising revenue of three websites. *See* Compl., Dkt. 1. Before the Court is Tabak's Motion to Dismiss, Dkt. 12, for lack of jurisdiction and for failure to state a claim for relief. For the reasons that follow, the Court will grant the motion in part, deny it in part, and stay all surviving claims pending arbitration.

## I.    BACKGROUND

Although Tabak provides his own version of the facts, Def.'s Mot. at 3–6, the Court must accept as true all material allegations in the complaint at this stage of the litigation, *see Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015). According to the plaintiffs, the dispute arises from several failed business relationships between Feinson and Tabak. The complaint alleges a number of grievances against Tabak, but the Court considers only those relevant to Tabak's motion to dismiss.

In the late 1990s and early 2000s, Feinson published two books titled *The Animal in You* (AIY) and *The Secret Universe of Names* (SUN), and he created "Animalinyou.com," a website

associated with the book of the same name.  Compl. ¶¶ 26, 30.  Feinson holds the copyright for both books.  *Id.* ¶ 30.

Feinson first began to work with Tabak in 2009, when he employed Tabak to upgrade the AIY website, which was created using Feinson's copyrighted content.  *Id.* ¶¶ 31, 33.  Although Feinson and Tabak never committed their agreement to writing, Tabak agreed to receive 50% of all online advertising revenue exceeding $600 per month in exchange for his technical expertise.  *Id.* ¶¶ 32, 33.

Subsequently, Feinson and Tabak formed two partnerships.  In 2015, they formed the SUN partnership.  *Id.* ¶ 34.  Under this partnership agreement, Feinson received 60% of the revenue and provided the copyrighted site content, while Tabak received 40% of the revenue for "constructing the website, writing the code, engaging in marketing, and [performing] site management."  *Id.* ¶ 36; *see also* Def.'s Mot. Ex. 1, Dkt. 12-1.  In 2016, Feinson and Tabak formed another partnership to create free, web-based personality and other quizzes on a variety of websites, including Quizinsight.com (QZI).  Compl. ¶¶ 41–42.  Under the QZI partnership agreement, Feinson and Tabak retained equal rights in the management of the partnership and shared profits and losses equally.  *Id.* ¶¶ 45, 51; Def.'s Mot. Ex. 2, ¶¶ 5, 7–8, Dkt. 12-2.  They also agreed that "[a]ny dispute or controversy herein shall be settled by arbitration in accordance with the Arbitration Act."  Def.'s Mot. Ex. 2, ¶ 15.

This lawsuit arises from Tabak's actions over the course of several weeks in May and June 2018.  In mid-May 2018, Tabak sought sole ownership of Quizoneer.com, one of the websites subject to the QZI partnership agreement.  Compl. ¶¶ 59–60; *see also id.* ¶ 63.  When Feinson refused to permit the ownership transfer, Tabak removed advertising from the SUN and QZI websites, and on May 20, he reinstated the advertising but diverted incoming funds to a

bank account fully under his control. *Id.* ¶¶ 65–66. Following an acrimonious email exchange with Feinson, Tabak disconnected all of the websites except the Quizoneer.com site from the internet, and he allegedly took a series of other actions to harm Feinson's financial interests. *Id.* ¶ 71. According to the plaintiffs, Tabak diverted approximately $2,000 to his personal use between the time he began diverting funds and the time he disconnected the websites from the internet. *Id.* ¶ 72. The plaintiffs also allege, "on information and belief," that Tabak "revived" a dormant Facebook account on May 30 and June 6 and "attempted to initiate advertising for then-nonexistent websites . . . to divert money from . . . Feinson's Ally Bank account to Facebook." *Id.* ¶ 74; *see also id.* ¶¶ 53, 73.

On August 9, 2018, Feinson, the QZI partnership, and the SUN partnership sued Tabak, alleging nine counts. *See* Compl. They allege that when Tabak interfered with the operations of the AIY, SUN, and QZI websites in May and June 2018, he violated the Racketeer Influenced and Corrupt Organizations (RICO) Act by committing extortion, wire fraud, bank fraud, and trade secrets theft, as well as by transporting stolen property across state lines. *Id.* ¶ 109. They further allege that he breached an oral contract for the AIY website and the SUN and QZI partnership agreements, *id.* ¶ 119, and that he breached his fiduciary duties under the SUN and QZI agreements, *id.* ¶ 125. They also allege that he infringed the AIY and SUN copyrights, *id.* ¶¶ 129, 136, fraudulently induced Feinson to enter into the SUN and QZI partnerships, *id.* ¶ 141, tortiously interfered with the operations of all three websites, *id.* ¶ 147, and converted Feinson's AIY property and the property of the SUN and QZI partnerships, *id.* ¶¶ 150, 152. They allege that Tabak either wrongfully dissociated from the SUN and QZI partnerships, or, if not, that they are entitled to an order judicially expelling him from those partnerships. *Id.* ¶ 162. And the

plaintiffs allege that they are entitled to an accounting of the QZI and SUN partnerships' assets. *Id.* ¶ 168.

## II. LEGAL STANDARDS

In general, the Federal Rules of Civil Procedure do not require "detailed factual allegations," *Banneker Ventures*, 798 F.3d at 1129 (internal quotation marks omitted), but instead a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2). At this stage, the court must "accept all the well-pleaded factual allegations of the complaint as true and draw all reasonable inferences from those allegations in the plaintiff's favor." *Banneker Ventures*, 798 F.3d at 1129.

### A. Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss under Rule 12(b)(1) "presents a threshold challenge to the court's jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). Federal district courts are courts of limited jurisdiction, and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Thus, the plaintiff bears the burden of establishing jurisdiction. *See Spokeo v. Robins*, 136 S. Ct. 1540, 1547 (2016). If, at any point, the court determines that it lacks jurisdiction, the court must dismiss the claim or action, whether on the defendant's motion or sua sponte. Fed. R. Civ. P. 12(b)(1), 12(h)(3).

### B. Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may seek dismissal on the ground that the plaintiff has failed "to state a claim upon which relief can be granted." To survive such a motion to dismiss, the plaintiff need only "alleg[e] facts sufficient to state a claim that is plausible on its face." *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1334 (D.C. Cir.

2015). "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable." *Id.* (internal quotation marks omitted).

## III.    ANALYSIS

Tabak raises both jurisdictional and merits challenges to the plaintiffs' claims. For the reasons that follow, the Court rejects Tabak's jurisdictional argument and concludes that the arbitration clause in the QZI partnership agreement requires arbitration of all claims involving the QZI partnership. The Court will also dismiss the RICO and fraud-in-the-inducement claims relating to the AIY contract and the SUN partnership, and it will stay the remaining claims until the parties have arbitrated the claims involving the QZI partnership.

### A.    The Jurisdictional Challenge

Tabak argues that the Court must dismiss "all" of the plaintiffs' claims because they failed to sufficiently allege that the amount in controversy exceeds $75,000. Def.'s Mot. at 11. The Court disagrees.

Under 28 U.S.C. § 1332(a), federal courts have diversity jurisdiction over certain state claims where "the matter in controversy exceeds the sum or value of $75,000." The amount-in-controversy requirement applies only when a plaintiff seeks to invoke diversity jurisdiction. Under 28 U.S.C. § 1331, federal courts have federal-question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Congress also has provided that federal courts have exclusive jurisdiction over "any civil action arising under any Act of Congress relating to . . . copyrights," 28 U.S.C. § 1338(a), and "supplemental jurisdiction over all . . . claims that are so related to claims in the action within [a court's] original jurisdiction that they form part of the same case or controversy," *id.* § 1367(a).

Even assuming that the amount in controversy does not satisfy the requirements for the Court's exercise of diversity jurisdiction under § 1332, the Court has federal-question jurisdiction over the copyright infringement claim.[1]  That claim arises under the Copyright Act, which is an "Act of Congress relating to . . . copyrights," 28 U.S.C. § 1338(a), and the plaintiffs seek statutory damages and other "remed[ies] expressly granted by the [Copyright] Act," *Scandinavian Satellite Sys., AS v. Prime TV Ltd.*, 291 F.3d 839, 844 (D.C. Cir. 2002) (internal quotation marks omitted); *see also* Compl. ¶ 169 (citing 17 U.S.C. §§ 502, 504–05).

For the remaining state claims, the Court has supplemental jurisdiction because those claims "form part of the same case or controversy."  28 U.S.C. § 1367(a).  "A federal claim and a state law claim form part of the same Article III case or controversy if the two claims derive from a common nucleus of operative fact such that the relationship between the federal claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional case."  *Lindsay v. Gov't Employees Ins. Co.*, 448 F.3d 416, 423–24 (D.C. Cir. 2006) (alteration adopted and internal quotation marks omitted).

Here, the facts the plaintiffs allege to establish copyright infringement overlap substantially those alleged to establish their state-law claims.  Indeed, the same acts taken in May 2018 that allegedly infringed Feinson's AIY and SUN copyrights also gave rise to the breach of contract, breach of fiduciary duty, tortious interference, and conversion claims, among others. Where "the same acts violate parallel federal and state laws, the common nucleus of operative facts is obvious."  *Id.* at 424 (quoting *Lyon v. Whisman*, 45 F.3d 758, 761 (3d Cir. 1995)).

---

[1] The Court also has federal-question jurisdiction over the RICO claim, but because it will dismiss the RICO claim under Rule 12(b)(6), *see infra* Section III.B.2, it does not rely on it for its jurisdiction.

Significantly, Tabak has not argued that the Court should decline to exercise supplemental jurisdiction based on one or more of the statutory factors delineated in 28 U.S.C. § 1367(c), and the Court is independently satisfied that it is appropriate to exercise supplemental jurisdiction here. In addition, even if it were inappropriate to exercise supplemental jurisdiction, the plaintiffs appear to have established diversity jurisdiction. *See, e.g.*, Pls.' Opp'n at 4 & nn. 3, 4, Dkt. 13-1; *see also Pietrangelo v. Refresh Club, Inc.*, No. 18-cv-1943, 2019 WL 2357379, at *6 (D.D.C. June 4, 2019) ("It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction." (quoting *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938))). For all these reasons, the Court has jurisdiction to reach the merits of this case.

### B. The Merits Challenges

#### 1. *All Claims Involving QZI*

Tabak argues that all claims involving QZI must be arbitrated under paragraph 15 of the QZI partnership agreement, which provides that "[a]ny dispute or controversy herein shall be settled by arbitration in accordance with the Arbitration Act." Def.'s Mot. Ex. 2, ¶ 15. The Court agrees.

As a threshold matter, Tabak did not, as the plaintiffs argue, *see* Pls.' Opp'n at 16–17, forfeit his right to arbitrate. A party "presumptively forfeit[s]" any right to arbitration if he fails to "invoke[] the right to arbitrate on the record at the first available opportunity, typically in filing his first responsive pleading or motion to dismiss." *Zuckerman Spaeder, LLP v. Auffenberg*, 646 F.3d 919, 922 (D.C. Cir. 2011). If a party fails to do so, he may still force arbitration if "his delay did not prejudice his opponent or the court." *Id.* at 923.

The plaintiffs do not dispute that Tabak invoked the right to arbitrate in his first responsive pleading. Instead, they argue that Tabak forfeited the right because he refused to engage in arbitration before the start of litigation. Pls.' Opp'n at 17 (citing Feinson Decl. ¶ 33, Dkt. 13-2). But they do not argue that they or the Court have suffered any prejudice. And as the D.C. Circuit put it, "a party may float all sorts of intentions, serious or not" "[i]n his pre-trial huffery and puffery." *Zuckerman Spaeder*, 646 F.3d at 923. "[A] court considering a question of forfeiture is properly concerned only with intentions placed upon the record." *Id.*; *see also id.* (focusing on a party's *filings* to determine whether he had waived the right to arbitrate); *cf. Partridge v. Am. Hosp. Mgmt. Co.*, 289 F. Supp. 3d 1, 17 (D.D.C. 2017) (collecting cases and explaining that "courts have deemed the right to compel arbitration waived where the litigation machinery had been substantially invoked and the parties were well into the preparation of the lawsuit by the time an intention to arbitrate was communicated" (alterations adopted and internal quotation marks omitted)).

The Court also rejects any argument that Tabak waived the right by "bur[ying] [his invocation of the clause in] the last sentence of the concluding paragraph of a subsection [of his brief] captioned about injunctive relief generally." Pls.' Opp'n at 15. Tabak's motion clearly argues that the arbitration clause "requires the parties [to] arbitrate all disputes[,] which includes this and all claims in the Complaint." Def.'s Mot. at 26; *cf. Partridge*, 289 F. Supp. 3d at 17 ("[C]ourts in this jurisdiction do not fault parties for seeking to compel arbitration in an answer that also asserts counterclaims and defenses.").

Turning to the merits, the Court must determine whether the parties agreed to arbitrate the claims alleged in the complaint. "[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Granite Rock Co. v.*

*Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010). "[D]isputes over the formation of an agreement to arbitrate" and "disputes over the breadth of an arbitration clause, where the parties disagree over whether a certain issue falls within or without the subject matter coverage of an undoubted agreement to arbitrate" are generally for courts to decide. *Dist. No. 1, Pac. Coast Dist., Marine Eng'rs' Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp.*, 815 F.3d 834, 844 (D.C. Cir. 2016) (internal quotation marks omitted). But in determining whether a valid arbitration clause encompasses a particular issue, courts must heed the Federal Arbitration Act's mandate that arbitration clauses "shall be valid, irrevocable, and enforceable," 9 U.S.C. § 2, and they must apply a "presumption of arbitrability." *Dist. No. 1*, 815 F.3d at 846. In other words, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

As noted, the arbitration clause in the QZI partnership agreement provides that "[a]ny dispute or controversy herein shall be settled by arbitration in accordance with the Arbitration Act." Def.'s Mot. Ex. 2, ¶ 15. Black's Law Dictionary defines "herein" broadly as "[i]n this thing," and it states that the term is "inherently ambiguous." Black's Law Dictionary (11th ed. 2019). Here, the use of the sweeping terms "any" and "herein," coupled with the presumption of arbitrability—which requires that any ambiguity be resolved in favor of arbitration—leads the Court to conclude that the arbitration clause encompasses at least those disputes that arose between Tabak and Feinson or QZI as a direct result of Tabak's partnership interest in QZI. Certainly, the Court cannot say "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers" such disputes. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986); *cf. id.* (explaining that the presumption of arbitrability "is particularly applicable where the clause is as broad as the one employed [in that

case], which provide[d] for arbitration of 'any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder.'"); *Dowley v. Dewey Ballantine, LLP*, No. 05-cv-622, 2006 WL 1102768, at *7–8 (D.D.C. Apr. 26, 2006) (concluding that a partnership agreement's arbitration clause covering claims "arising out of th[e] Agreement" required arbitration of "any dispute between [the parties] that [was] in any way connected with the partnership agreement, and ar[o]se[] out of their agreement," including "breach of fiduciary duty, violation of the covenant of good faith and fair dealing, age discrimination, [and] interference with prospective economic advantage," which "all ar[o]se out of [the partnership's] right to request plaintiff to withdraw from the partnership").

The plaintiffs argue that the clause's reach should be limited because it does not use the terms "arising under" or "related to," which have previously been interpreted expansively. Pls.' Opp'n at 16. But the terms used here—"*any* dispute or controversy *herein*"—are also broad, and none of the cases cited by the plaintiffs suggest otherwise.

The arbitration clause therefore encompasses not only the claim that Tabak breached the QZI partnership agreement but also the alleged breach of his fiduciary duties that arose as a matter of law because of the agreement. Compl. ¶¶ 120–25. The Court is also persuaded that the other claims that arose as a direct result of Tabak's partnership interest in QZI—the RICO claim as it relates to the QZI partnership, *id.* ¶¶ 84–109, the claim of tortious interference with the QZI partnership's online business, *id.* ¶¶ 142–47, the claim of conversion of the QZI partnerships' property, *id.* ¶¶ 148–52, the claim of wrongful dissociation from the QZI partnership, *id.* ¶¶ 153–62, and the claim for an accounting of the QZI partnership's assets, *id.* ¶¶ 163–68—are covered by the broad language of the arbitration clause.

The claim of fraud in the inducement must be arbitrated as well. The Federal Arbitration Act provides that courts must "hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Interpreting this language, the Supreme Court has held that, although a "federal court may proceed to adjudicate" a claim of "fraud in the inducement of the arbitration clause itself," a federal court may not "consider claims of fraud in the inducement of the contract generally." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967); *see also Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70–71 (2010) (similar); *Pan Am Flight 73 Liaison Grp. v. Dave*, 639 F.3d 1102, 1105 (D.C. Cir. 2011) (similar). Arbitration is thus required because the plaintiffs contend that "Tabak fraudulently induced . . . Feinson to contract with Tabak to enter the . . . QZI partnership agreement[]," not that Tabak fraudulently induced the arbitration clause itself. Compl. ¶ 141.

However, arbitration is not required for the state claims involving the AIY contract and the SUN partnership. Although many of these claims arise from a series of actions that took place at the same time as those affecting the QZI partnership, the arbitration clause's use of the word "herein" cannot be stretched to encompass claims that do not involve the QZI partnership. *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("While ambiguities in the language of the agreement should be resolved in favor of arbitration, we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." (internal citation omitted)); *cf. Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1116 (11th Cir. 2001) ("Disputes that are not related—with at least some directness—to performance of duties specified by the contract do not

count as disputes 'arising out of' the contract, and are not covered by the standard arbitration clause.").

The Federal Arbitration Act provides that once a court is "satisfied that [an] issue involved in [a] suit or proceeding is referable to arbitration under such an agreement," it must "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Accordingly, the Court will not consider counts I, II, III, V, VI, VII, VIII, and IX as they relate to the QZI partnership and will instead compel arbitration of those claims. *See* 9 U.S.C. § 4; *see also Dist. No. 1*, 815 F.3d at 837 (affirming an order compelling arbitration).

2. *The Civil RICO Claim (Count I)*

The plaintiffs argue in Count I that Tabak violated the RICO statute by engaging in a pattern of racketeering activities affecting the AIY, SUN, and QZI websites. Compl. ¶¶ 85–109. Because the allegations involving QZI must be arbitrated, the Court considers only the RICO allegations involving the AIY and SUN websites, and it concludes that those allegations are insufficient to establish a pattern of racketeering activity.[2]

The RICO statute, 18 U.S.C. § 1964(c), creates a cause of action for "[a]ny person injured in his business or property by reason of a [RICO] violation." The plaintiffs allege a violation of 18 U.S.C. § 1962(c), which makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." "A violation of § 1962(c) . . . requires (1)

---

[2] The rest of this Memorandum Opinion likewise considers only the plaintiffs' claims as they relate to the AIY and SUN websites.

conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (footnote omitted).

To show that a pattern exists, the plaintiffs must establish that the defendant committed at least two predicate racketeering acts within a ten-year period. *See* 18 U.S.C. § 1961(5); *see also Western Assocs. Ltd. P'ship v. Mkt. Square Assocs.*, 235 F.3d 629, 633 (D.C. Cir. 2001). The Supreme Court has interpreted the pattern element to require both relatedness and continuity: "To prove a pattern of racketeering a plaintiff . . . must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989) (emphasis omitted). Continuity "may be proved by establishing either a closed period of repeated conduct or a threat of future criminal activity." *Western Assocs.*, 235 F.3d at 633 (internal quotation marks omitted). The plaintiffs do not allege a threat of future criminal activity and therefore must allege a closed period of repeated conduct to establish their RICO claim.

The D.C. Circuit has created a six-factor test to determine whether a plaintiff has established a pattern of racketeering activity. Courts must consider "the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity." *Id.* (internal quotation marks omitted). Although this standard "presents a flexible guide for analyzing RICO allegations on a case by case basis," *id.* at 634, to state a RICO claim where there is no threat of future criminal conduct, the plaintiff must allege that the predicate acts were "committed over a period longer than a few weeks or months," *id.* at 636 (internal quotation marks omitted); *see also H.J. Inc.*, 492 U.S. at 242 ("Congress was concerned in RICO with long-term criminal conduct."). And "if a plaintiff alleges only a single scheme, a single injury,

and few victims[,] it is virtually impossible for [the] plaintiff[] to state a RICO claim." *Western Assocs.*, 235 F.3d at 634 (internal quotation marks omitted).

The allegations in the complaint fall well short of satisfying this standard. Most problematically, Tabak allegedly committed the predicate acts between late May 2018 and June 6, 2018—a time period that is only questionably "longer than a few weeks or months." *Id.* at 636 (internal quotation marks omitted). Tabak allegedly committed wire fraud and bank fraud on May 30, 2018 and June 6, 2018. Compl. ¶¶ 95, 98. He allegedly stole trade secrets and transported stolen property across state lines from May 20 to May 29, 2018. *Id.* ¶¶ 101, 108. And although the complaint does not clearly specify when Tabak allegedly committed the final predicate act, extortion, that act too appears to be based on conduct taken in the second half of May 2018, when Feinson and Tabak exchanged a series of emails about their various contracts. *Id.* ¶¶ 60–70, 92. The only acts that allegedly took place outside of this confined time period were Tabak's actions with respect to QZI's Quizoneer.com, and as noted, those acts are subject to the arbitration clause discussed above. Thus, the timing factor weighs heavily against the plaintiffs' claim.

Considering the other relevant factors, none suggests a pattern of racketeering activity. The plaintiffs take issue with only two sets of actions—Tabak's initiation of two Facebook charges and his handling of AIY, SUN, and QZI software, code, and content. Not only were these alleged actions not similar in nature, they involved only one alleged perpetrator—Tabak— and he allegedly harmed only Feinson and the two partnerships. Moreover, the "character of the alleged racketeering activity" resembles "an ordinary business deal gone sour" rather than one involving "a wide-ranging series of extensive criminal schemes." *Western Assocs.*, 235 F.3d at

636.  For these reasons, the Court will dismiss the RICO claim as to the acts involving the AIY and SUN websites.

### 3.    *The Fraud in the Inducement Claim (Count V)*

To allege fraud in the inducement, a plaintiff must establish "(1) a false representation, (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action taken in reliance upon the representation, (6) which consequently resulted in provable damages."[3] *Jacobson v. Hofgard*, 168 F. Supp. 3d 187, 195 (D.D.C. 2016) (alteration adopted and internal quotation marks omitted).  Federal Rule of Civil Procedure 9(b) further requires a plaintiff alleging fraud to "state with particularity the circumstances constituting fraud."  Interpreting this mandate in combination with Rule 8(a), the D.C. Circuit has explained that plaintiffs must "state the time, place[,] and content of the false misrepresentations, the fact misrepresented[,] and what was retained or given up as a consequence of the fraud," as well as the "identi[ty] [of the] individuals allegedly involved in the fraud."  *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004) (internal quotation marks omitted).

Tabak argues that the plaintiffs failed to allege with particularity that he fraudulently induced Feinson to execute the SUN partnership agreement, and the Court agrees.  Def.'s Mot. at 20–21.  With respect to the alleged misrepresentations, the plaintiffs state only that Tabak "falsely represented to . . . Feinson that [he] would follow the SUN . . . agreement[] . . . when . . . Tabak knew at the outset and did not disclose that [he] intended to insinuate himself into a position of trust and access, from which he could attempt to exercise extortion over [the]

---

[3] There is no suggestion in the complaint or motion-to-dismiss briefing that any law other than D.C. law could apply to the relevant contracts.

"[p]laintiffs' property." Compl. ¶ 139. Absent from this cursory statement are any particularized

facts about the alleged misrepresentations, including their time and place. *See id.* ¶ 140

(referring to multiple "false statements"); *cf. Jones v. District of Columbia*, 241 F. Supp. 3d 81,

89 (D.D.C. 2017) (plaintiffs failed to comply with Rule 9(b) by, among other things, failing to

"state[] with particularity the time and place of the alleged misrepresentations"), *aff'd on other*

*grounds*, 715 F. App'x 1 (D.C. Cir. 2018); *Taylor v. Wells Fargo Bank, N.A.*, 85 F. Supp. 3d 63,

73 (D.D.C. 2015) ("Plaintiff does not allege when the fraudulent misrepresentations were made,

where they were made, or, very importantly, which Defendants made the misrepresentations.").

The Court will therefore dismiss the fraud in the inducement claim as to the SUN partnership

agreement.

4. *The Remaining Claims (Counts II–IV and VI–IX)*

Tabak also argues that the remaining eight counts must be dismissed for failure to state a

claim under Federal Rule of Civil Procedure 12(b)(6). Underlying the majority of Tabak's

challenges is a charge that the plaintiffs failed to provide evidence in support of their claims and

that they "hope to find evidence for their claims if given the opportunity to do so in discovery."

Def.'s Mot. at 15; *see also, e.g.*, *id.* at 19 ("[T]he Complaint is a pretext that requires discovery

to attempt to find evidence to support baseless allegation[s]."); *id.* at 23 ("Plaintiffs again are

asking the Court to simply take their word that these events did in fact occur."); *id.* at 26 ("Had

there been any shred of evidence of Defendant's malfeasance, they would have been attached as

exhibits to the Complaint. Instead, Plaintiffs maliciously filed this baseless Complaint as a

pretext for discovery.").

Under Rule 8(a), "[a] pleading that states a claim for relief" need only contain "a short

and plain statement of the grounds for the court's jurisdiction," a "short and plain statement of

the claim showing that the pleader is entitled to relief," and a "demand for the relief sought, which may include relief in the alternative or different types of relief." To satisfy this standard, plaintiffs must "give the defendants fair notice of what the claim is and the grounds upon which it rests," *Jones v. Kirchner*, 835 F.3d 74, 79 (D.C. Cir. 2016) (internal quotation marks omitted), and they "must plead facts sufficient to show that [a] claim has substantive plausibility," *Johnson v. City of Shelby*, 574 U.S. 10, 10 (2014) (per curiam) (internal quotation marks omitted). "[T]he Rule does not require detailed factual allegations." *Jones*, 835 F.3d at 79 (internal quotation marks omitted). At the pleading stage, a court must "accept all the well-pleaded factual allegations of the complaint as true and draw all reasonable inferences from those allegations in the plaintiff[s'] favor." *Banneker Ventures*, 798 F.3d at 1129. Although plaintiffs must establish "more than a sheer possibility that a defendant has acted unlawfully," they do not have to meet a "probability requirement." *Id.* (internal quotation marks omitted). "[A] well-pleaded complaint should be allowed to proceed even if it strikes a savvy judge that actual proof of the alleged facts is improbable, and that a recovery is very remote and unlikely." *Id.* (alteration adopted and internal quotation marks omitted). Similarly, "[a] complaint survives a motion to dismiss" even where the plaintiffs and the defendant advance "plausible" "alternative explanations" because, although the defendant's version may "prove to be the true one, . . . that does not relieve [him] of [his] obligation to respond to a complaint that states a plausible claim for relief, and to participate in discovery." *Id.* (internal quotation marks omitted).

The remaining counts meet the requirements of Rule 8(a), and the Court will not heighten the notice-pleading standard and demand detailed evidentiary submissions to substantiate these claims for relief before the plaintiffs have had a chance to obtain discovery.

### i.  The Breach of Contract Claims (Count II)

"To prevail on a claim of breach of contract, a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Logan v. LaSalle Bank Nat'l Ass'n*, 80 A.3d 1014, 1023 (D.C. 2013) (internal quotation marks omitted).  Tabak appears to argue that the plaintiffs' AIY and SUN breach of contract claims fail for two reasons: "there is no written AIY contract" and the SUN allegations are "vague and conclusory."  Def.'s Mot. at 16–17.  Neither argument is persuasive.

*First*, a valid contract may exist even in the absence of a written agreement.  Under D.C. law, an oral contract exists if the parties "agree[] to all material terms" and "inten[d] . . . to be bound." *Ashrafi v. Fernandez*, 193 A.3d 129, 131 (D.C. 2018).  The plaintiffs sufficiently alleged both elements, *see, e.g.*, Compl. ¶¶ 31–33, 112, and Tabak appears to concede the point. He admits, for example, that although "AIY has no formal contract or agreement," he "worked on AIY on a regular basis since 2009, and in October 2013[,] Feinson offered [Tabak] fifty percent of the monthly profits over $600."  Def.'s Mot. at 4.  He does not suggest that he did not agree to those terms or intend to be bound by those terms.

*Second*, the Court rejects Tabak's attempt to heighten the notice-pleading standard.  In combination with the complaint's lengthy factual background, the allegations that Tabak breached the implied covenants of good faith and fair dealing as well as specific provisions in the SUN partnership agreement are both plausible and sufficient to put Tabak on notice of the claims against him.

ii.     The Breach of Fiduciary Duty Claim (Count III)

To plead a breach of a fiduciary duty, a plaintiff must allege sufficient facts showing

"(1) [the] defendant owed [the] plaintiff a fiduciary duty; (2) [the] defendant breached that duty;

and (3) to the extent [the] plaintiff seeks compensatory damages[,] the breach proximately

caused an injury." *Paul v. Judicial Watch, Inc.*, 543 F. Supp. 2d 1, 5–6 (D.D.C. 2008).  Tabak

argues that the plaintiffs' breach of fiduciary duty claim fails with respect to the SUN partnership

because the plaintiffs have not sufficiently alleged the existence of any fiduciary duty or

otherwise stated a claim for relief.  Def.'s Mot. at 18.  But the complaint alleges that Tabak owed

fiduciary duties by operation of law under D.C.'s Uniform Partnership Act, D.C. Code § 29-

604.07(b)–(c), which imposes fiduciary duties on all partners.  In particular, it alleges that Tabak

breached his duties (1) to account to the partnership, *id.* § 29-604.07(b)(1), (2) to hold as trustee

any property, profit, or benefit derived in the conduct and winding up of the partnership business

or derived from a use of partnership property, *id.*, and (3) to refrain from engaging in intentional

misconduct and knowing violations of the law, *id.* § 29-604.07(c); *see also* Compl. ¶ 122.  It

further alleges, among other things, that the breach caused an injury in the form of "lost profits"

and additional expenses.  *Id.* ¶ 124.  At this stage, nothing more is required.[4]

iii.     The Copyright Infringement Claims (Count IV)

"To establish infringement, two elements must be proven: (1) ownership of a valid

copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns,*

*Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  Tabak concedes the first element of the

---

[4] Tabak contends that "any acts involving intentional misconduct require[] specificity in [their] pleading," Def.'s Mot. at 18, but he cites no authority for this proposition, and his argument appears to confuse the heightened standard for alleging *fraud* or *mistake* under Federal Rule of Civil Procedure 9(b) with the ordinary notice-pleading standard at issue here, *see* Fed. R. Civ. P. 8(a).

plaintiffs' copyright infringement claims, but he disputes whether he "copied or caused to be copied elements of [the] original work[s]," namely AIY and SUN. Def.'s Mot. at 19. He also argues that the complaint fails to put him on notice of the claims because the plaintiffs' allegations are "vague and conclusory" and fail to identify "when or how [Tabak] seized control of the websites, what material was posted[,] and how many third parties viewed the material." *Id.*

The Court disagrees. The plaintiffs allege that Feinson has "the exclusive right [to] reproduce the copyrighted works," to "prepare derivative works based . . . upon the copyrighted works," to "distribute copies of the copyrighted works to the public," and to "display the copyrighted works publicly." Compl. ¶ 130. They further allege that between May 20 and May 29, 2018, "when . . . Tabak had seized control of the websites before he took the websites offline, . . . Tabak was posting . . . Feinson's copyrighted content without . . . Feinson's permission or SUN's permission." Compl. ¶ 131. Again, these allegations, in combination with the factual background provided in the complaint, are both plausible and sufficient to put Tabak on notice of the claims against him.

iv.     The Tortious Interference Claims (Count VI)

To establish a prima facie case of intentional interference with business relations, "the plaintiff must prove: (1) [the] existence of a valid contractual or other business relationship; (2) the defendant's knowledge of the relationship; (3) intentional interference with that relationship by the defendant; and (4) resulting damages." *Onyeoziri v. Spivok*, 44 A.3d 279, 286 (D.C. 2012) (internal quotation marks omitted). With respect to the existence of a valid contractual or other business relationship, the D.C. Court of Appeals has held that "a plaintiff obviously need not demonstrate the existence of a contract, but merely a prospective

advantageous business transaction." *Casco Marina Dev., LLC v. D.C. Redevelopment Land Agency*, 834 A.2d 77, 84 (D.C. 2003). Although a "mere possibility" is insufficient, a "probability of [a] future contractual or economic relationship," *Marshall v. Allison*, 908 F. Supp. 2d 186, 202–03 (D.D.C. 2012), *aff'd on other grounds*, 554 F. App'x 20 (D.C. Cir. 2014), that is "commercially reasonable" will create a valid business expectancy, *Sabre Int'l Sec. v. Torres Advanced Enter. Sols., Inc.*, 820 F. Supp. 2d 62, 77 (D.D.C. 2011).

The plaintiffs allege that Tabak tortiously interfered with the relationships between the plaintiffs and Google through his actions affecting the AIY and SUN websites. Pls.' Opp'n at 12; *see also* Compl. ¶¶ 144–47. According to the plaintiffs, "prior to Tabak's unilateral, malicious, knowing, and intentional actions, the websites made more than $2,000 monthly from Google's AdSense platform." Pls.' Opp'n at 12. In response, Tabak argues that the claim fails because there was no "contractual or other relationship with Google that funneled customers to the websites," and he contends that Tabak "could not tortiously interfere with his own agreements to his own detriment." Def.'s Reply at 9, Dkt. 14.

Neither of Tabak's objections are persuasive. As the owner of the AIY website, Compl. ¶ 30, and as a partner in the SUN partnership, *id.* ¶ 34, Feinson had a commercially reasonable expectation of future profits from Google, as demonstrated by the previous revenue earned from the AIY and SUN websites, *see, e.g.*, *id.* ¶ 54; *see also Sabre Int'l Sec.*, 820 F. Supp. 2d at 77. And the plaintiffs do not allege that Tabak interfered with a *contractual* relationship. Instead, they argue that Tabak interfered with "a prospective advantageous business transaction" with Google. *Casco Marina Dev.*, 834 A.2d at 84. The Court therefore rejects Tabak's challenges to the tortious interference claim.

v.     The Conversion Claims (Count VII)

To state a claim for conversion, a plaintiff must allege "(1) an unlawful exercise, (2) of ownership, dominion, or control, (3) over the personal property of another, (4) in denial or repudiation of that person's rights thereto." *Xereas v. Heiss*, 933 F. Supp. 2d 1, 6 (D.D.C. 2013) (internal quotation marks omitted). Tabak argues that the plaintiffs' conversion claims cannot proceed because the plaintiffs' allegations are "vague and conclusory" and fail the "who, what, when test." Def.'s Mot. at 23. Again, Tabak confuses the heightened standard for pleading fraud or mistake, *see* Fed. R. Civ. P. 9(b), with the ordinary notice-pleading standard, *see* Fed. R. Civ. P. 8(a). The plaintiffs have alleged that Tabak "asserted dominion and control over . . . Feinson's AIY property and the SUN . . . partnership['s] property," Compl. ¶ 150, and that Tabak "has refused" to return the property despite a demand by Feinson, *id.* ¶ 151. These allegations are plausible and sufficient to put Tabak on notice of the claims against him.[5]

vi.     The Judicial Expulsion or Wrongful Dissociation Claim (Count VIII)

Tabak next challenges the plaintiffs' judicial expulsion or wrongful disassociation claim because (1) it allegedly lacks a valid statutory cause of action; (2) it illegitimately requests two forms of relief—either a declaration that Tabak has wrongfully dissociated from the partnership or, if he has not already dissociated, judicial expulsion from the partnership—and (3) it fails to put Tabak on notice of the claim against him. Def.'s Mot. at 24–25. None of these arguments are meritorious.

---

[5] Tabak also suggests that the complaint is factually inaccurate, *see, e.g.*, Def.'s Reply at 9, but at this stage, the Court must accept the facts alleged in the complaint as true, *see Banneker Ventures*, 798 F.3d at 1129.

*First*, the D.C. Code provides a cause of action for wrongful dissociation, and it permits judicial expulsion. With respect to wrongful dissociation, the D.C. Code provides that "[a] partner that wrongfully dissociates shall be liable to the partnership and to the other partners for damages caused by the dissociation." D.C. Code. § 29-606.02(c). And D.C. Code § 29-606.01 provides that a partner "shall be dissociated from a partnership when . . . [o]n application by the partnership or another partner, the partner is expelled by judicial determination because the partner . . . [e]ngaged in wrongful conduct that adversely and materially affected the partnership business." D.C. Code § 29-606.01(5)(A); *see also* D.C. Code § 29-604.08(b)(2); *cf. Headfirst Baseball LLC v. Elwood*, 239 F. Supp. 3d 7, 16 (D.D.C. 2017) (recognizing a judicial expulsion claim under an analogous statute for limited liability companies).

*Second*, it is well established that plaintiffs may plead in the alternative. As provided in Federal Rule of Civil Procedure 8(d), plaintiffs may "set out [two] or more statements of a claim or defense alternatively or hypothetically, either in a single count . . . or in separate ones," Fed. R. Civ. P. 8(d)(2), and they may "state as many separate claims or defenses as [they] ha[ve], regardless of consistency," *id.* 8(d)(3); *see also Scott v. District of Columbia*, 101 F.3d 748, 753 (D.C. Cir. 1996) ("Scott could properly plead alternative theories of liability, regardless of whether such theories were consistent with one another."). The Court is therefore unpersuaded that the plaintiffs must "state their position and request as to that position," as Tabak argues. Def.'s Mot. at 24.

*Third*, in light of the factual background and the statements in count VIII, the Court concludes that the allegations in the complaint are both plausible and sufficient to put Tabak on notice of the claims against him.

vii.     The Request for an Accounting (Count IX)

The plaintiffs' final count seeks an accounting of the assets of the SUN partnership.

Compl. ¶¶ 164–68.  The D.C. Court of Appeals has explained that "[a] partner's right to an

in-court accounting is an essential incident of the partnership relation." *Washington Med. Ctr.,*

*Inc. v. Holle*, 573 A.2d 1269, 1285 (D.C. 1990).  "[A] partner has a right to an accounting upon

dissolution, including, if necessary, a right to obtain the assistance of the court if such an

accounting is refused." *Berk v. Sherman*, 682 A.2d 209, 217 (D.C. 1996).

Tabak argues that dismissal is appropriate for two reasons, but the Court is unpersuaded.

Tabak's primary argument appears to be that the plaintiffs have failed to meet the standard for a

preliminary injunction.  Def.'s Mot. at 25–26; Def.'s Reply at 10–11.  The plaintiffs, however,

have not sought a preliminary injunction.  Tabak also suggests, in passing, that the plaintiffs'

allegations are "vague and conclusory."  Def.'s Mot. at 26.  But again, the Court has reviewed

the allegations in the complaint, and it finds that they are plausible and sufficient to put Tabak on

notice of the claim against him.

**C.     Staying the Nonarbitrable Claims**

Left with both arbitrable and nonarbitrable claims, the Court must decide whether to stay

the nonarbitrable claims pending arbitration.  *See* 9 U.S.C. § 3 ("[U]pon being satisfied that the

issue involved in [a] suit or proceeding is referable to arbitration under [an arbitration]

agreement, [the district court] shall on application of one of the parties stay the trial of the action

until such arbitration has been had in accordance with the terms of the agreement.").  Whether to

stay nonarbitrable claims in a case with arbitrable claims is "a matter of [the district court's]

discretion to control its docket."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460

U.S. 1, 20 n.23 (1983); *see also Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966,

971 (7th Cir. 2007) ("[T]he cases . . . treat the question whether to stay the entire case as discretionary in cases involving both arbitrable and nonarbitrable issues." (internal quotation marks omitted)).  In exercising that discretion, courts generally consider, among other things, the likelihood that the arbitration will "resolve issues material to th[e] lawsuit," "the risk of inconsistent rulings, the extent to which [the] parties will be bound by the arbitrator['s] decision, and the prejudice that may result from delays."  *AgGrow Oils, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 242 F.3d 777, 783 (8th Cir. 2001); *see also Klay v. All Defendants*, 389 F.3d 1191, 1204 (11th Cir. 2004).

Weighing these factors, the Court concludes that a stay is appropriate here.  Because all of the claims arise from the same series of events, "the arbitration might help resolve, or at least shed some light on, the issues remaining in federal court."  *Volkswagen of Am., Inc.*, 474 F.3d at 972.  Indeed, most of the plaintiffs' claims allege misconduct involving all three websites.  And neither party has suggested that they will suffer any prejudice from a stay of the case. Accordingly, the Court will stay all surviving claims until the resolution of the compelled arbitration.

## CONCLUSION

For these reasons, the Court grants in part and denies in part Tabak's Motion to Dismiss, and it stays this action pending arbitration.

DABNEY L. FRIEDRICH
United States District Judge

September 4, 2019

25